Okay, good morning. We're ready for our last case today, and that is case number 19-14434, Richard Hunstein v. Preferred Collection and Management Services. Mr., is it Bonin or Bonin? Good morning, and may it please the court, it's Mr. Bonin. Okay, Mr. Bonin, you're on. All right, thank you. So, we have here today, I represent the appellant consumer, Mr. Hunstein, bring an FDCPA case. Majority of the elements of the case are not in contention. He's a consumer, it's a consumer debt, the defendant is a debt collector, and the letter that they sent Mr. Hunstein on January 29th, 2019, is clearly a debt collection letter, seeking to collect debt. The issue here is the way that that letter was sent, and specifically, a communication to a consumer. I want to start off by explaining kind of what the mail house does in this process, because I believe that's essential to applying the language of the statute. Picture it almost like if I was going to make my daughter a peanut butter and jelly sandwich, all right? And I spread peanut butter on one piece of bread and jelly on the other, and I handed it to my wife and say, hey, can you squish it together and give it to our daughter? All right? What the debt collector did in this case is they spread the peanut butter and the jelly, which is a form template collection letter, and then a data sheet or consumer data about the debtor, so it has the name, address, amount, creditor, and then they give it to the mail vendor, who then squishes these two things together and then sends it to the consumer, Mr. Hunstein. So with that in mind, the connection, that communication to the mail house is certainly a communication in connection with the collection of the debt. It's a causal communication, a direct causal communication. It's the exact same way that we would look at it in a causation analysis for any type of claim, but for that communication to the debt collector, or excuse me, to the mail house, the collection letter would have never reached Mr. Hunstein. So if we're turning back to the statute itself, which is 1692CB, it clearly states that a debt collector may not communicate, comma, in connection with the collection of a debt, comma, with any person other than the consumer, his attorney, a credit reporting agency, a creditor, the attorney of a creditor, or the attorney of a debt collector. All right, let me give you a hypothetical one step removed from this case. Okay. Let's say that there is a collection agency that is still working in pre-electronic times, and they want to send, you know, dunning letters in hard copy, and they don't have the facilities to create copies of all the letters. They want to send the letter to the debtor. They want to keep a letter for themselves, and they want a third copy to keep at some, you know, distant facility where they keep all their papers, but they have so many debtors that they're going to subcontract the copying of these letters. So the collection agency creates the letter, puts all the information, does everything, but then gives a letter to a copy company, and the copy company receives a letter and makes copies two and three of every letter and gives it back to the collection agency. Is that in connection with the collection of a debt? I would still say yes, it is, because it is a, though it is a less direct connection because it's not a causal step, it is still part of the process from start to finish, an intentional process in order to bring the letter to the consumer. If the, if in that hypothetical, and then I'll stop, if in that hypothetical, the collection agency gets new management, and after getting all the copies back from the copy center, decides not to send any of the letters and shreds them all, is it in connection with the collection of a debt? And the reason I'm asking you these crazy questions is because I want to know where you look at the in-connection period. Do you look at the in-connection requirement at a certain temporal point, and then it's done no matter what happens later, or you look at it all the way through the time of the lawsuit and see what transpired after the event in question. I understand. So I would say that the analysis of what's in connection would depend on the type of violation. Here we're talking about a disclosure violation, so perhaps a reasonable analysis then would be to say, as soon as that disclosure is made in the process, you know, that's where we're going to be looking at it. Comparing that to, for example, 1962E, which was just referenced in the presentation, it doesn't make a lot of sense to kind of view it in that angle for that type of violation because there hasn't been any reliance or there hasn't been any misrepresentation in that situation. You've answered my questions. Thank you very much for doing that. I don't want to keep you from the rest of your argument. No problem, and I'll speed through for a little bit because I'm seeing that I'm starting to run out of a little bit of time. You can always use part of your rebuttal time if you would prefer. So that's not a problem. Just let us know. I appreciate it. Thank you, Your Honor. If we look towards the actual language, language is clear. And if we turn towards the United States Supreme Court for guidance, looking to the Obdusky case, where they actually referenced this specific subsection, Justice Breyer and his majority opinion says that, you know, for example, there's a very broad prohibition against third-party disclosures in 1692. Council, two-minute warning. Thank you. So what we're looking at here is a very broad prohibition on a very broad definition of what a communication is. The definition of a communication under the FDCPA is any communication, direct or indirect, is very, very expansive. So that is what Mr. Einstein is looking at as an expansive view of what is a communication when it's a communication that's in direct causation connection with that debt collection letter. Even if we don't look at it as a clear statutory language, turning towards the other provisions of the FDCPA, the statutory scheme in section E, D, and F, we have Congress said, hey, here's the general prohibition, and then a non-exhaustive list of examples. In this specific subsection, C, subsection B, it's not a non-exhaustive list. It's a very limited list of exceptions. So I believe that should be applied to look at, hey, this is not one of those limited exceptions. This is not going to fly underneath the statutory definition. Underneath the district court's analysis of what's in connection, there's nothing that would be stopping a debt collector if they're creative enough of just sending to, say, the debtor's neighbor, here's the spreadsheet, here's the template. If you want to put it together and deliver it next door, go for it. Well, that initial communication to the neighbor is not in connection based on the district court's opinion, which is why we believe it should be reversed. It has all the hallmarks of a collection letter as far as the status, the amount of the debt, the creditor, everything that if they were just to post it, it would be an issue, and that's why it needs to be reversed. I'm going to go ahead and reserve the rest of my time to discuss the standing issue on the bubble. All right. Thank you very much, Mr. V, or Veig. How do I pronounce it? Robert Vye. You're on mute. Okay. Good morning, Your Honor. May it please the court. This is Robert Vye. I'm an attorney for Preferred Collection and Management Service. Good morning. Good morning. Your Honor, this appeal obviously is a case on the FDCPA in which the consumer filed a complaint alleging that the use of a mail house violated 1692CB of the Fair Debt Collection Practices Act. As the appellant has argued, there are a limited list of people with whom a debt collector may communicate in connection with the collection of a debt. Can I ask you just a question just to make sure we've got the table set? You don't dispute, I take it, that this was a communication. Your dispute is that this was not in connection with. Right. Our point is there were two communications. The first communication, the one that's at issue, is the transmission of information from Preferred to the mail house. That's the issue that's in dispute. The letter that was generated, that's the second communication. There's been no claim that that letter in any way violates the FDCPA. Right. But from debt collector to mailing house, you don't dispute that that was a communication with the meaning of the act, just that you say that it wasn't in connection. Correct. 1692A2 defines communication as conveying information relating to a debt. So therefore, we don't disagree that the communication is a communication under the FDCPA. Our point is that that communication did not violate the FDCPA. And the reason for that is because 1692CB qualifies communications specifically to communications in connection with the collection of a debt. And there's a fact that- So can you help us just understand, we've done our due diligence kind of poking around in the seems to me that in connection with is typically defined extraordinarily broadly. So why isn't this, I don't know, I mean, why isn't it in connection with related to whatever, however it is you want to analogize it? Right. I mean, you were attempting to collect a debt, right? By sending, having the letter sent, that was attempting to collect the debt. Yes. I mean, I just mean like the overarching process, the point of you engaging the mailing house, you were chasing the debt, right? I mean, so why isn't your communication to the mailing house in connection with, which I'll take to mean related to in some way the collection of a debt? Right. So based on my review of the case law, there's a factor-based analysis for determining whether or not the communication is in connection with the collection of a debt. There are some times when the communication between the debt collector and the consumer is not in connection with the collection of a debt. The 11th circuit has identified certain factors, a relationship between the parties, whether or not there's a demand for payment in that communication, whether there's a threat for consequences. So the communication that's at issue with the mail house does not meet that factor-based analysis. Bill, I'm curious, if it's the district, oh, I'm sorry, Judge Chokla, let me just ask one more. So if, as the district court said, and I think you just said, if like key to this in connection with inquiry is a demand for payment, how then do you make sense of the exceptions that are written into the statute? I mean, you know, like let me get the statutory language in front of me. The exceptions like for consumer reporting agencies, the attorney of the debt collector, the creditor, the attorney for the creditor, no communication with any of those people would ever be a demand for payment. So in connection with means demand for payment, then those exceptions are sort of superfluous, right? Well, in the situation where the communication is with the consumer's attorney, it could be in connection with the collection of a debt. When it's reporting to a credit reporting agency, it could be as well. But in a situation where the communication is with the creditor or the debt collector's attorney, it would not be. But in a situation where it's with the consumer's attorney or a credit reporting agency, it could be in connection with the collection of a debt. I mean, I guess the question I'm asking is that in connection with sort of means what it means. And if it means, as you're saying, that it entails a demand for payment, then you've got some aspects of the statute that no longer makes sense because there would never be a demand for payment and thus a communication under your theory in connection with the collection of a debt to a consumer reporting agency, the attorney of the debt collector, the creditor or the attorney for the creditor, you would never make a demand for payment to those people. Presumably not. So I guess I just don't think I quite then understand how in connection with can entail a demand for payment sort of with respect to some people, but not with respect to other people in this list, in this unitary list. Right. I am applying the factor based analysis from the cases to this situation. So in a factor based analysis, the letter that was the letter that was generated, the second communication does meet the requirements of a communication in connection with the collection of the debt. The mere transmission of the information to the mail house does not. So last question for me, and then I'm going to zip it. So do you mean that in connection with means sometimes in this statute demand for payment, but at other times it doesn't mean demand for payment? Unfortunately, Congress defined communication, but it did not define communication in connection with the collection of the debt. And if that is used throughout the Fair Debt Collection Practices Act, that if there had not been the definition of communication and there had simply been communication in connection with the collection of a debt, it would be a much easier, simpler answer. Gotcha. Okay. Thank you. Aren't the words simply the expression of causation, which leads to a factual inquiry? Pardon me? I didn't understand. The in connection with is a way of expressing causation. Okay. Yes. Which is a factual inquiry. Sure. Okay. So when they send the information to the mail house, and the letter goes to the debtor, then the question becomes one of causation. Isn't that the size of it? The causation? Well, yeah, I guess you could say that if in connection with the collection of the debt means... There is a collection. There's an effort to collect. Right. So the question becomes whether this activity is part of the effort to collect, I'll put it that way, as part of cause. Right. Yeah, sure. And I guess causation can go all the way back. So I understand that how broadly we want to interpret the definition of in connection with the collection of a debt, and how we want to distinguish that from the definition provided by Congress of communication. There have been cases where a message has been left, doesn't define the debt, it relates information, tells to call, and that's considered not to be a communication because it doesn't transmit information about the debt. But there is a cause there, and that cause is to get the person to call so that they can pay on the debt. So I think that the causation issue, I think, and the FDCPA still protects the consumer in this situation, because the letter itself, the ultimate letter, if it violates the FDCPA, the debt collector is liable for any violation under the act. So, and then, you know, our argument also raised standing, which the district court did not rule on standing, but we were asked to brief the court based on the Moransky and Tritchell decisions of standing and decide whether or not there's been an allegation of sufficient injury to establish standing in this case. We have asserted that the conclusory allegations, the bare violation of the statute, which we that at some future time, a consumer or this consumer may be harmed by the disclosure to the third party in his reputation, we've argued that those conclusory allegations are not sufficient. Oh, go ahead, Judge George. No, no, no, it's okay. It's okay. Go right ahead. So just a quick one, I suppose. Why isn't, you know, Spokio and Moransky both refer to the, you know, sort of historical analysis and whether there's a common law analogy. Why isn't there a fairly clear common law analogy here to the subspecies of the tort invasion of privacy for publication of private information? Right. I mean, there was a lot of private stuff in this letter, right? Right. And the publication was to a vendor of the debt collector. And as in the hypothetical that Judge Jordan brought up, the vendor makes a copy of the letter and sends it out. Is that a publication in that sense, is something that damages the reputation of the consumer? Likewise, in reporting to a consumer reporting agency, the debt collector may not only send the letter but report the debt to a consumer reporting agency, which may affect the consumer's reputation. That's a publication to anybody that seeks the information. This is a publication to one party for one purpose, to disclose information, to generate a letter. And it's not for any other purpose. You know, not for the purpose as Mr. Bonin raises, you send the template to the neighbor and ask the neighbor to prepare the letter. Well, in that situation, you can see that the purpose there would be to harm the reputation of the consumer. Here, what is alleged in the complaint, the sole purpose was to be more efficient and increase profits for the debt collector, not to damage his reputation per se. But I don't want to get too technical, but isn't the sort of relationship you're talking about might give rise at common law to a privilege, which would make the conduct non-actionable, but doesn't take away the fact that there might have been injury? In other words, in the world of defamation and libel law and so-called dignitary torts, you can sometimes take action that is but privileged in some way, either absolutely or in a qualified way. And that allows you to avoid liability, but it doesn't take away from any extent harm that the person may have suffered due to the defendant's conduct. Am I missing something? Sure. In the case of like a qualified privilege in court proceedings, that type of thing where statement is made, is the person still injured? Is it an actionable injury, a concrete injury, a tangible injury? In this case, the injury that's alleged is based on the violation of the statute. So it is a intangible injury. And the risk of we looked at it from the point of view of the risk of injury. Has there been any data breaches? Has there been any disclosure of this information? And so that's the way we're looking at it from that point of view. Maybe I'm missing the question. No, no. I think you understand it. And that's just your perspective on how to analyze the issue, especially under the factor-based test that you've proposed. So no, I completely understand your answer. Thank you. Can I ask you one last question about standing? Sort of along the lines of the question I asked earlier about invasions of privacy. So we've got this case. Are you familiar with this case of ours called Perry versus CNN? Yes, sir. Yeah. So in Perry, right? I mean, that was the disclosure of a plaintiff's news viewing history or browsing history or something to a third party. And we said, close enough to the common invasion of privacy twerk. Why isn't this pretty analogous? A discloses B's information to C. Maybe because of the way that C used the information. C in the Perry case was Bango, I believe. And they searched the MAC addresses and found purchasing history. And they used it for their own profit. Counselor, your argument has expired. Please finish your answer. Okay, thank you. And so in that case, we find that it is distinguishable from Perry. Also the fact that we find that there's no violation of the statute based on the communication in connection with a debt interpretation. On behalf of my client, I would like to thank the court for your time. All right, Mr. Vi, thank you very much. Mr. Bonin, you've got your rebuttal time. Thank you, your honor. Our position is that the invasion of privacy issue is exactly like what occurred in Perry and CNN. In that case, we're talking about, I believe it was videotape rental and sale records. I would say that the invasion of privacy for, I guess it depends on the videotape, videotape rental records compared to what we have here, which is a debt related to child medical care. That's much more damaging. We're talking about not only child records, but child medical records, depending on what all was communicated, which unfortunately we did not get to do any discovery on this case. So I would say it's exactly in line with that invasion of privacy issue that's established in this court in Trichel, and then also in Moransky. Also on the point of Moransky, they talk about, I believe they called a breach of confidence tort, which the court did some analysis on, and it's not one I'm terribly familiar with. But even that goes very similar to what we're talking about here. The typical breach of confidence claim, according to the case, was about a doctor, someone with a close confidential relationship with the plaintiff. I don't think any consumer is going to describe their relationship with the debt collector as close, but there is this confidentiality aspect that is established by this statute right here. I think as far as who that disclosure is to is less of a standing issue and more of a damages issue. Was the plaintiff harmed by this disclosure to the mail vendor compared to, in my example, of a neighbor? I think obviously the damages, the compensation would be much higher for the neighbor disclosure, but there is still that intangible harm based on that common law invasion of privacy claim. And if we're looking at the actual purpose, the congressional intent in 1692a, the stated purpose of the FDCPA, it's to, what their findings were is that the abuse of debt collection contributes to a number of personal bankruptcies, marital instabilities, loss of jobs, and invasions of privacy. So this certainly seems like the type of harm that's, you know, there's a historical support that Congress was intending to prevent. You know, if the data sheet and the form letter was posted on, say, social media, and all we had was, you know, the amount, the creditor, where, you know, the patient name, I don't think there'd be any question that there is a standing issue. So I believe as far as who the disclosure is to that, you know, person C, that's more of a question for the trier of fact to examine as to damages. And if they believe that there are none, they have the ability to, after analyzing the facts and the testimony of the consumer to, you know, act accordingly. I will, I do want to note before my time runs out, that the district court opinion in response to this motion to dismiss was dismissed with prejudice. So we did not have, even though we did ask for a leave to amend in our response. So as far as are any deficiencies in the pleadings, specifically allegation 29 of our complaint, which is on page 13 of the appendix, we haven't really had the opportunity to address the, especially the new decisions that have come out in the 11th on standing. I believe best practice in response to those same decisions is to include an affidavit from the consumer detailing, you know, what effect or how they responded to this improper disclosure. So I would respectfully ask this court to remand the case with those instructions, if they do still find our pleading deficient. And also on a final note, I did notice in the Moransky decision, the majority opinion on bond mentioned that the plaintiff in that case never asked for, you know, leave to supplement their pleadings. And it referenced a case, which I know I'm not going to pronounce correctly, but I believe it's Otita Watch League v. Jacobs, where this court did allow a supplemental affirmation statement on the standing of issue from the issue or from the person who is the party who is trying to establish standing. It's not something we've requested, but based on the language in Moransky, I think I would be remiss not to make a motion or a tennis to if this court finds it useful, permission and leave to submit a affidavit from Mr. Hunstein, further expanding on the issue. And with that, I'll... Can I ask you a merits question real quick before you sit down? So will you just respond briefly to Mr. Vai's response to me in my questioning about sort of how can in connection with me and one thing with respect to, you know, creditors and another thing with respect to sort of, you know, other people. And he said, you know, that there's this factor-based analysis that I think I understood him to say that that allows for enough kind of play in the joints for that phrase to mean different things that kind of with respect to different people. Will you just respond to that? Yeah, so and the factor-based analysis that we see in these cases is really focusing on, I mean, the factor-based analysis isn't met in this case by the July 29th Once again, I believe it's Farhassan v. Citibank and then Kinloch v. Wells Fargo. There was no additional communication where there was a demand for payment. It was a loan modification offer. We didn't have that July 29th letter that clearly was a debt collection communication. So as far as the in connection with in the factor-based analysis, the factor-based analysis can be applied in this case to that July 29th letter. And then we look at, based on the language of the statute, what communications have occurred in connection with that letter that meets the factor-based analysis. Got it. Okay, thank you. Okay, Mr. Bohnen, Mr. Vai, thank you both very much. We appreciate it. That concludes our session for today. So we will take the cases under advisement and we will stand adjourned until nine o'clock tomorrow. So thank you very much.